**Opinion issued January 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00103-CV

————————————

**JOE ANTHONY BEAMES, PERSONAL REPRESENTATIVE OF THE
ESTATE OF DEBORAH KAY DAVIS, Appellant**

**V.**

**EDWIN HOWARD HOOKS, JR., Appellee**

On Appeal from the 98th District Court
Travis County, Texas
Trial Court Case No. D-1-GN-07-003482

## MEMORANDUM OPINION

In 2007, Deborah Kay Davis sued her former husband, Edwin Howard Hooks, Jr., for breach of contract, alleging that he failed to pay monthly contractual alimony payments, an obligation contained in an agreement incident to their

divorce decree. Davis died during the pendency of her suit, and her brother, Joe Anthony Beames, the personal representative of her estate, assumed responsibility for prosecuting the suit. The trial court dismissed the suit for want of prosecution in August 2013. In three issues, Beames contends that (1) the trial court erred by denying his motion to reinstate the case; (2) the trial court erred by denying the motion to reinstate without holding a hearing on the motion; and (3) the trial court erred by dismissing the case.

We affirm.

## Background

Davis and Hooks divorced in 2000. At that time, the parties entered into an "Agreement Incident to Divorce" that generally addressed matters concerning the division of their marital property. This agreement also included a provision obligating Hooks to pay contractual alimony to Davis following the divorce. This provision required Hooks to pay Davis $5,000 per month beginning on February 29, 2000, and continuing through January 31, 2010, and it required Hooks to pay Davis, as alimony, a payment of $45,000 on June 30, 2002.

On October 10, 2007, Davis filed the underlying suit against Hooks for breach of contract, alleging that Hooks had stopped making payments under the agreement incident to divorce. The parties and their counsel attempted to reach a settlement agreement, and they entered into a Rule 11 agreement extending Hooks'

2

deadline to answer until Davis's counsel provided written notice "that an answer needs to be filed."

In October 2008, the trial court signed an order dismissing the case for want of prosecution. Davis filed a motion to reinstate the case on the docket.

On April 22, 2009, the trial court signed an order granting Davis's motion to reinstate. In the order, the trial court referred the case to alternative dispute resolution to occur within ninety days of the date of the order, as allowed by the Travis County local rules.[1] The trial court also ordered Davis's counsel to deliver an ADR Certification to the court within ninety days of the date of the order, or by July 22, 2009, indicating whether the parties had successfully completed mediation. Finally, the trial court ordered that, if mediation was not successful, the parties were to submit a proposed scheduling order to the court within 120 days of the order. The trial court administrator mailed a letter informing the parties that the trial court had granted the motion to reinstate, summarizing the requirements contained within the trial court's order, and stating, in all caps, "Failure to comply with these requirements will subject a case to automatic dismissal without further notice."

---

[1] The Supreme Court of Texas transferred this appeal from the Third Court of Appeals in Austin to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

The parties did not complete mediation by July 22, 2009. Davis and Hooks exchanged e-mails, but were unable to come to an informal resolution of the dispute on their own. Hooks then filed an answer on October 9, 2009.

The next document that appears in the clerk's record is a suggestion of death, filed by Beames on April 17, 2013, informing the trial court that Davis had passed away on December 19, 2011, that her will had been admitted to probate in Oklahoma, and that the Oklahoma probate court had appointed Beames as personal representative of Davis's estate.

On August 1, 2013, Beames moved for summary judgment on the breach of contract claim against Hooks. Beames argued that the evidence conclusively established that, pursuant to the agreement incident to divorce, Hooks owed Davis's estate a total of $390,000 in past contractual alimony payments.

Hooks moved to dismiss Davis's suit for want of prosecution on August 9, 2013. Hooks recited the procedural history of the case, stating that, after the trial court signed the April 2009 order reinstating the case, the parties had a mediation deadline of July 22, 2009. The parties did not agree to mediate until over a year later, in August 2010, and they were not able to schedule a mediation date until December 9, 2011. After Davis's counsel informed Hooks that she would be unable to attend, Hooks cancelled the mediation, unaware that Davis was

extremely ill at the time. Davis died ten days after the scheduled mediation date on December 19, 2011. Hooks argued,

> Since 2010, [Davis's] counsel has suggested moving the case with either depositions or a trial setting. [Hooks's] counsel has constantly reminded [Davis's] counsel that discovery cannot proceed in a retained case until a mediation has occurred in compliance with the local rules. In a letter date[d] May 3, 2012, [Davis's] counsel once again wanted to proceed with discovery in this case not having complied with mediation. On June 3, 2013, [Hooks's] counsel again advised [Davis] of the requirements of a retained case and indicated that a Motion to Dismiss would be filed if [Davis] persisted in moving the case forward. . . . This case has been on file with this court for almost six (6) years, since October 10, 2007. [Davis] did not comply with Travis County Local Rule 8.8. [Hooks] agreed to a mediation in 2010. Three (3) years have passed and mediation has still not been completed. The extent of activity in the case has been negligible and [Davis] can provide no reasonable excuse for these continued delays.

Hooks argued that the trial court ought to dismiss Davis's case for want of prosecution.

The trial court held a hearing on Hooks's motion to dismiss. Both parties submitted e-mail and letter correspondence between the attorneys reflecting the parties' communications and attempts to schedule mediation after the trial court granted Davis's motion to reinstate in April 2009. The trial court ultimately granted the motion to dismiss on August 29, 2013.

Beames requested findings of fact and conclusions of law and also moved for a new trial. Beames argued that he had showed that good cause existed to maintain the case on the docket, that Davis was "duly diligent" in prosecuting the

5

case and that delays were "caused by [Davis's] willingness to accommodate [Hooks's] heavy caseload and as well by [Davis's] health problems which culminated in her death," that the need to probate Davis's will after her death caused a delay of more than a year, that there was "no evidence that [Davis] through her overt acts intentionally impeded the judicial process nor did her actions at any time cause any injury to [Hooks]," that he and Davis "exercised due diligence at all times in preparing for the trial as needed and performed all necessary functions of trial preparation and in fact [were] at all times pertinent prepared to present [their] summary judgment to which [they were] entitled except for engaging in mediation which [Hooks] insisted upon," and that Davis had a meritorious cause of action.

Beames also filed a verified motion to reinstate the case, in which he argued that the delay was "due to mistake or other reasonably explained events beyond the control of persons involved and were in no way related to a lack of desire to proceed with due diligence to successfully conclude the case." Beames argued that, after Hooks answered, Hooks insisted that Davis "follow the retention order even though [the mediation] deadline had passed and furthermore, there was little justification for the expense of mediation where the only issue was how much money" Hooks would pay Davis. Beames argued that the parties attempted to schedule mediation throughout 2010 and 2011, but they were hindered by Davis's

declining health and occasional hospital stays. After Davis died unexpectedly in December 2011, it took time to locate Davis's will, have that will admitted to probate in Oklahoma, and have Beames appointed as personal representative.

The trial court did not hold a hearing on Beames's motion to reinstate or motion for new trial. Instead, the trial court denied the motions and issued its findings of fact and conclusions of law, detailing the procedural history of the case and activity by the parties and ultimately concluding that Davis failed to prosecute the case with adequate diligence and that the case should be dismissed for want of prosecution. The trial court specifically concluded that Davis's case should be dismissed due to her failure to bring the case to trial or final disposition within (1) eighteen months of the filing of the original petition or (2) eighteen months of the granting of the motion to reinstate. This appeal followed.

## Motion to Reinstate

In his first issue, Beames contends that the trial court erroneously denied his motion to reinstate the case. In his second issue, Beames contends that the trial court erred in denying his motion to reinstate without holding a hearing on the motion. Finally, Beames contends in his third issue that the trial court erred in dismissing the case.

7

## A.    *Dismissal for Want of Prosecution and Reinstatement*

Two sources grant a trial court the authority to dismiss a suit for want of prosecution: (1) Texas Rule of Civil Procedure 165a and (2) the trial court's inherent authority.  *See* TEX. R. CIV. P. 165a; *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999).  The trial court may dismiss a case pursuant to Rule 165a based on "the failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice" or when the case is not disposed of within the time standards promulgated by the Texas Supreme Court.  *See Villarreal*, 994 S.W.2d at 630 (citing TEX. R. CIV. P. 165a(1), (2)).  The common law also grants the trial court "the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence."  *Id.*; *Dueitt v. Arrowhead Lakes Prop. Owners, Inc.*, 180 S.W.3d 733, 737 (Tex. App.—Waco 2005, pet. denied).

When the trial court dismisses a case for want of prosecution, the court "shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained."  TEX. R. CIV. P. 165a(3); *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam).  A failure of the party or his attorney is not intentional or due to conscious indifference "within the meaning of the rule

8

merely because it is deliberate; it must also be without adequate justification." *Smith*, 913 S.W.2d at 468. "Proof of such justification—accident, mistake or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied." *Id.* Conscious indifference "means more than mere negligence." *Id.* Rule 165a(3)'s reinstatement provision applies to all dismissals for want of prosecution, including those made under the trial court's inherent power. *See Brown Mech. Servs., Inc. v. Mountbatten Sur. Co.*, 377 S.W.3d 40, 44 n.1 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Cappetta v. Hermes*, 222 S.W.3d 160, 164 (Tex. App.—San Antonio 2006, no pet.), and *Brown v. Howeth Invs., Inc.*, 820 S.W.2d 900, 903 (Tex. App.—Houston [1st Dist.] 1991, writ denied)); *see also* TEX. R. CIV. P. 165a(4) ("The same reinstatement procedures and timetable are applicable to all dismissals for want of prosecution including cases which are dismissed pursuant to the court's inherent power . . . .").

When determining under its inherent authority whether the plaintiff has demonstrated a lack of diligence in prosecuting his case, the trial court may consider the entire history of the case including the length of time the case was on file, the extent of activity in the case, whether the plaintiff requested a trial setting, and the existence of reasonable excuses for delay. *Dueitt*, 180 S.W.3d at 739; *Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 129 (Tex. App.—Houston [14th Dist.] 1999, no pet.). None of the factors are dispositive, and a belated trial

9

setting or the plaintiff's stated readiness to proceed to trial does not conclusively establish diligence. *Dueitt*, 180 S.W.3d at 739. The plaintiff bears the burden of demonstrating that he has diligently prosecuted his case. *See Jimenez*, 999 S.W.2d at 130; *Tex. Mut. Ins. Co. v. Olivas*, 323 S.W.3d 266, 274 (Tex. App.—El Paso 2010, no pet.) ("The complaining party has the burden to bring forth a record to support its contention."). We review the trial court's decision "to determine whether the litigant demonstrated good cause for not prosecuting with greater diligence." *Olivas*, 323 S.W.3d at 274.

We review a trial court's ruling dismissing a case for want of prosecution and a court's ruling on a motion to reinstate for an abuse of discretion. *See Smith*, 913 S.W.2d at 468; *Franklin v. Sherman Indep. Sch. Dist.*, 53 S.W.3d 398, 401 (Tex. App.—Dallas 2001, pet. denied) (per curiam). A trial court abuses its discretion when it acts "without reference to any guiding rules or principles," that is, when it acts in an arbitrary and unreasonable manner. *Dueitt*, 180 S.W.3d at 737. A trial court does not abuse its discretion when "its decision is based on conflicting evidence or when some evidence of a substantive and probative character exists to support the trial court's decision." *Olivas*, 323 S.W.3d at 275 (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)).

Here, Davis filed suit against Hooks on October 10, 2007. On November 2, 2007, the parties filed a Rule 11 agreement with the trial court in which Davis

agreed to extend Hooks's answer deadline until her counsel gave Hooks's counsel "written notice that an answer needs to be filed." The only evidence contained in the record of any activity in the case between October 2007 and October 2008 is two letters from Hooks's counsel to Davis's counsel, dated December 2007 and September 2008, inquiring about the status of the case and about whether the parties could reach a settlement agreement. The trial court dismissed the case for want of prosecution in October 2008.

Davis filed a motion to reinstate shortly thereafter. The trial court granted that motion on April 22, 2009. The trial court referred the case to alternative dispute resolution and ordered that the parties complete mediation within ninety days of the order. The order required Davis to deliver to the court, by July 22, 2009, a certification of whether the parties had successfully completed mediation. If mediation did not resolve the case, the order required the parties to submit a proposed scheduling order within 120 days. The trial court administrator mailed a notice to the parties summarizing the contents and requirements of the trial court's order and stating, "Failure to comply with these requirements will subject a case to automatic dismissal without further notice." It is undisputed that the parties never mediated the case, nor did they file a proposed scheduling order with the trial court.

The parties exchanged letters immediately after the trial court granted the motion to reinstate, in which they both expressed a desire to settle the case by requiring Hooks to pay a lump sum to Davis. In October 2009, Davis notified Hooks that she was willing to accept a lump sum of $375,000 and requested, if that offer was not acceptable, that Hooks "please file [his] answer no later than October 12, so we can begin our discovery." Hooks answered on October 9, 2009.

There is no indication that any discovery ever took place. Instead, the record includes a letter from Davis's counsel to Hooks's counsel, dated June 28, 2010, in which Davis's counsel stated that he would like to schedule the case for trial in October 2010 and that he hoped the parties could try to mediate the case in July 2010. Hooks responded on August 9, 2010, stating that he agreed to mediate the case and requesting that Davis forward a list of proposed mediators. Davis sent a letter containing three possible mediators on November 17, 2010, and Hooks responded five days later agreeing to one of Davis's choices.

The record indicates that no further activity occurred in the case until June 23, 2011, when Davis e-mailed Hooks and stated her intention to mediate the case in July 2011, two years after the trial court ordered the parties to complete mediation. The parties spent the next several months trying to schedule mediation with their chosen mediator, and they finally scheduled mediation for December 9, 2011. Davis, however, was hospitalized in late November 2011, and after her

12

counsel reported that she would be unable to attend the mediation, the parties cancelled the mediation. Davis passed away on December 19, 2011. The Oklahoma probate court admitted Davis's will to probate in February 2013 and appointed Beames personal representative of Davis's estate. Beames filed a suggestion of death with the trial court in the underlying case in April 2013. Neither Davis nor Beames ever requested a trial setting, and neither party filed a dispositive motion in the case until Beames moved for summary judgment in August 2013, nearly six years after Davis first filed suit.

The record thus reflects several long stretches of time during which little to no activity occurred in the case. *See Dueitt*, 180 S.W.3d at 739 (listing, as relevant factors when reviewing trial court's ruling dismissing case for want of prosecution, length of time case was on file, extent of activity in case, whether trial setting had been requested, and existence of reasonable excuses for delay). The case had been on file for more than three years before the parties agreed on a mediator in August 2010, despite the trial court's April 2009 order—which reinstated the case after the trial court dismissed it for want of prosecution in October 2008—requiring the parties to conduct mediation within ninety days, or by July 22, 2009. The case was on file for almost three more years before Hooks moved to dismiss it in August 2013, there is no indication that the parties have conducted any discovery, and Davis never requested a trial setting, although Beames filed a dispositive motion

13

shortly before Hooks moved to dismiss. Beames offers Davis's declining health as an explanation for the delay, but her health concerns do not explain why her counsel did not attempt to resolve the case as quickly as possible instead of taking years to select a mediator.

In its findings of fact and conclusions of law, the trial court made the following conclusions: (1) "[Davis's] case should in all things be dismissed for failure to bring the case to trial or final disposition within eighteen (18) months of the filing of the Original Petition"; and (2) "[Davis's] case should in all things be dismissed for failure to bring the case to trial or final disposition within eighteen (18) months of the granting of the Motion to Reinstate." We conclude that the record supports the trial court's determination that Davis and Beames failed to demonstrate that they diligently prosecuted the case. *See Olivas*, 323 S.W.3d at 275; *Dueitt*, 180 S.W.3d at 739; *Jimenez*, 999 S.W.2d at 129–30. We hold that the trial court did not abuse its discretion in granting Hooks's motion to dismiss based on its inherent authority and denying Beames's motion to reinstate.

We overrule Beames's first and third issues.

### B. *Failure to Hold Hearing on Motion to Reinstate*

Rule 165a(3) provides that, upon receiving a motion to reinstate the case, the trial court "shall set a hearing on the motion as soon as practicable" and that "[t]he court shall notify all parties or their attorneys of record of the date, time and place

14

of the hearing." TEX. R. CIV. P. 165a(3). The Texas Supreme Court has held that it is "not within the discretion of the trial court to fail to hold an oral hearing on the motion to reinstate." *Thordson v. City of Houston*, 815 S.W.2d 550, 550 (Tex. 1991) (per curiam); *see also Dueitt*, 180 S.W.3d at 740 ("The rule is mandatory, and the trial court has no discretion about whether to set a hearing on the motion."). Here, it is undisputed that the trial court did not hold an oral hearing on Beames's motion to reinstate. The trial court thus abused its discretion. *See Dueitt*, 180 S.W.3d at 740.

We must now determine whether the trial court's failure to hold a hearing on the motion to reinstate constitutes reversible error. *See* TEX. R. APP. P. 44.1(a) (stating standard for demonstrating reversible error in civil cases); *Dueitt*, 180 S.W.3d at 740 ("We now turn to whether the trial court's failure to hold a hearing is harmless."). The trial court's error requires reversal if it probably caused the rendition of an improper judgment or if it probably prevented Beames from properly presenting his case to this Court. *See* TEX. R. APP. P. 44.1(a); *Dueitt*, 180 S.W.3d at 741.

In *Dueitt*, the Waco Court of Appeals addressed whether the trial court's failure to hold an oral hearing on the plaintiffs' motion to reinstate constituted reversible error when the plaintiffs had received notice and a hearing on the defendant's earlier motion to dismiss for want of prosecution. *See* 180 S.W.3d at

15

741. The court noted that a motion to reinstate "ensures that the dismissed party has received due process, because participation in the reinstatement hearing cures any due process concerns." *Id.* The court determined that the plaintiffs had received due process because they "received adequate notice" of the hearing on the motion to dismiss, and they had the opportunity to respond to the motion to dismiss "which is all that due process requires." *Id.* The court reasoned, "If participation in a motion to reinstate cures any due process error in the original hearing on the motion to dismiss, we do not see why the reverse should not also be true." *Id.* The court thus concluded that if the trial court satisfied due process by holding a hearing on the original motion to dismiss, then the trial court's failure to hold a hearing on the subsequent motion to reinstate was harmless. *Id.* In holding that the trial court's failure to hold a hearing did not constitute reversible error, the *Dueitt* court also pointed out that "the Dueitts did not promulgate any new arguments or advocate the discovery of new evidence supporting their claims in their motion to reinstate." *Id.*

Here, Hooks moved to dismiss the suit for want of prosecution. Hooks pointed out that the trial court had dismissed the case for want of prosecution in October 2008 and then reinstated the case in April 2009, ordering the parties to complete mediation by July 22, 2009. Hooks argued that Davis did not secure his agreement to mediate until August 2010, that mediation was not scheduled until

16

December 2011, that the parties cancelled the mediation, that Davis died shortly thereafter, that the parties have never mediated the case, and that no discovery had taken place due to a Travis County local rule that prohibits discovery in retained cases until the parties complete mediation. Hooks argued that "[t]he extent of activity in the case has been negligible and [Davis] can provide no reasonable excuse for these continued delays."

As supporting evidence, Hooks attached the trial court's April 2009 order reinstating the case and the letter from the trial court coordinator that accompanied the April 2009 order and informed the parties that their failure to comply with the mediation requirements set out in the order "will subject a case to automatic dismissal without further notice." Hooks also attached an August 2010 letter from his counsel to Davis's counsel informing him of Hooks's agreement to mediate and asking for a list of proposed mediators and a June 2013 letter from his counsel to Davis's counsel reminding him that discovery could not proceed until mediation occurred and that he had agreed to mediation almost three years before.

Beames did not file a written response to Hooks's motion to dismiss. He did, however, participate in the oral hearing on the motion to dismiss. At the hearing, the trial court admitted a series of letters and e-mails exchanged between the attorneys throughout the almost six years the case had been on file. Most of the letters and e-mails were dated between June and December 2011 and concerned

17

the attorneys' attempts to schedule mediation. At the hearing on the motion to dismiss, Beames focused on Davis's illness, which had impacted her ability to travel and had led to her final hospital stay several weeks before her eventual death in December 2011. Beames argued that, at the outset of the suit, the attorneys entered into a Rule 11 agreement that Hooks would not have to file an answer until Davis's counsel requested it. Beames argued that Davis had an operation in December 2010, which affected her ability to participate in the case, and that Davis's counsel attempted to mediate the case in the summer of 2011, but it was December 2011 before the parties could schedule mediation.

Beames then argued that, after Davis died in Oklahoma in December 2011, her relatives could not find her will and it took until February 2013 for the Oklahoma court to admit Davis's will to probate and appoint Beames as personal representative of her estate. He also stated, "I would like the Court to allow me, if I may, to get the records from Oklahoma to show when it was filed and how it was handled and things of that sort. Because it was done just as quickly as we could do it." The trial court admitted into evidence a copy of the suggestion of death filed by Beames in April 2013 and the Oklahoma court's February 2013 order admitting Davis's will to probate.

The trial court granted Hooks's motion to dismiss. Beames filed a verified motion to reinstate the case. The motion to reinstate reiterates the same arguments

18

that Beames made at the hearing on the motion to dismiss. He again focused on Davis's illness, the delays in scheduling the case for mediation, and the delays caused by admitting Davis's will to probate in Oklahoma and appointing Beames as personal representative. Beames did not attach records from the Oklahoma probate proceedings to his motion to reinstate, nor did he file a formal bill of exceptions containing these records or otherwise attempt to include this evidence in the record before the trial court.

On October 7, 2013, the trial court issued findings of fact and conclusions of law. The trial court's conclusions of law included conclusions that "[n]o credible and persuasive evidence was presented to the court that [Davis's] failure to prosecute this case was due to accident or mistake or that the failure was otherwise reasonably explained," that "[Davis's] failure to prosecute was either intentional or the result of conscious indifference," that "[Davis's] failure to prosecute this case was without adequate justification," and that "[Davis's] case should in all things be dismissed for failure to diligently prosecute." The trial court also concluded that "[Davis's] case should in all things be dismissed for failure to bring the case to trial or final disposition within eighteen (18) months of the filing of the Original Petition" and that "[Davis's] case should in all things be dismissed for failure to bring the case to trial or final disposition within eighteen (18) months of the

19

granting of the Motion to Reinstate." The trial court did not make any conclusions of law concerning the time period after Davis's death in December 2011.

On appeal, Beames argues that, because the trial court did not hold a hearing on his motion to reinstate, he was denied the "full opportunity to present his arguments and evidence to the Court." Beames points out that the trial court did not hear any testimony at the hearing on Hooks's motion to dismiss, and his counsel had "indicated to the court his desire to obtain copies of records from the probate proceedings in Oklahoma in order to help explain the reasons for the delay prosecuting the case after the death of the original plaintiff."

As Hooks points out, however, at the hearing on his motion to dismiss, the trial court indicated its willingness to put Beames's counsel under oath if he needed to present sworn testimony concerning his actions in prosecuting the case. Beames's counsel did not insist on testifying under oath. Furthermore, Beames did not raise any new arguments in his motion to reinstate that he had not already raised at the hearing on the motion to dismiss. He argues on appeal that he had indicated a desire to obtain copies of Oklahoma probate records, but there is no indication that he ever obtained the copies, and he was able to present argument at the hearing on the motion to dismiss concerning the delay caused by the Oklahoma probate proceedings. We also note that, in its conclusions of law, the trial court concluded that Beames's case should be dismissed due to the failure to bring the

case to trial or final disposition within eighteen months of the filing of the original petition and the April 2009 granting of the motion to reinstate, both of which occurred years before Davis died and her estate went into administration in Oklahoma. The trial court did not make any conclusions of law regarding the time period between Davis's death in December 2011 and the filing of Hooks's motion to dismiss in August 2013.

We therefore conclude that, based on this record, Beames has not demonstrated that the trial court's failure to hold a hearing on his motion to reinstate constituted reversible error. *See* TEX. R. APP. P. 44.1(a); *Dueitt*, 180 S.W.3d at 741 (holding trial court's failure to hold hearing on motion to reinstate was harmless error when case was on file for thirteen years, plaintiffs' counsel admitted he had never requested trial setting, and plaintiffs offered no new evidence in motion to reinstate).

We overrule Beames' second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.